IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARY CATHERINE BAUR                          :
                  Plaintiff,

      v.                                   :
                             CIVIL NO. 08-1222

ELIZABETH CRUM; TOM HINES;
KAREN WERTHEIMER; DAVID CICOLA;   :
TODD SEELIG; and, THE DEPARTMENT
OF LABOR AND INDUSTRY
                  Defendants.                 :

## MEMORANDUM

**Jones, J.**                                                        **March 30, 2012**

## I.    Introduction

The above-captioned matter arises from Plaintiff Mary Catherine Baur's employment as

an Attorney Examiner in the Bureau of Workers' Compensation Office of Adjudication.

Throughout the course of her decade-long term of employment with Defendants, Plaintiff has

complained that on several occasions, various co-workers attempted to physically choke/strangle

her, and that she has been systematically discriminated against since her employment

commenced in 1996.  In addition to calling the Capitol Police and threatening to call the FBI,

Plaintiff has filed numerous Civil Service Commission, Pennsylvania Human Relations

Commission (PHRC) and Equal Employment Opportunity Commission (EEOC) complaints

against Defendants throughout the course of her employment.

Plaintiff filed the within action on March 12, 2008, alleging violations of Title VII of the

Civil Rights Act of 1964 and 42 U.S.C. §1983.[1] In her Amended Complaint, Plaintiff brings

---

[1] Plaintiff filed an Amended Complaint on June 17, 2008.  However, the Amended
Complaint fails to comply with basic federal pleading standards requiring "short and plain

retaliation, gender discrimination, and hostile work environment claims pursuant to Title VII of

the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2, 2000e-3, as well as a First

Amendment retaliation claim and a gender discrimination claim pursuant to 42 U.S.C. § 1983 ("§

1983").   After extensive discovery, Defendants filed a Motion for Summary Judgment and for the

reasons which follow, this Court will grant judgment on behalf of Defendants regarding all of

Plaintiff's claims, except her § 1983 gender discrimination claim and her hostile work

environment claim.

## II.   Factual Background [2,3]

Plaintiff began working for Pennsylvania's Department of Labor and Industry ("L&I") on

February 5, 1996, as an Attorney Examiner I. (Defs' Am. Statement of Undisputed Facts, ¶ 1.)

The Attorney Examiner I position is a first level administrative judge position from which

---

statement[s] of the claim showing that the pleader is entitled to relief, including allegations that
are "simple, concise and direct." Fed.R.Civ.P. 8(a)(1), (d)(1). Instead, the entire pleading is
discombobulated and leaves the reader guessing as to which facts Plaintiff alleges pertain to any
particular claim.  Inasmuch as this matter was referred to the undersigned at the summary
judgment stage, this Court has made every attempt to decipher Plaintiff's claims in conjunction
with the voluminous record and briefing, while simultaneously viewing them in a light most
favorable to Plaintiff.

[2] Only facts relevant to the pending claims and issues will be discussed.

[3] Despite a direct Order by the court for both parties to go back and re-brief this motion
in accordance with this Court's policies and procedures for summary judgment motions, Plaintiff
apparently deemed it appropriate to rest on much of what she originally filed.  Responsive
briefing in this matter includes general citations to exhibits that are labeled the same as other
documents, thereby forcing the court to continue to sift through hundreds of pages of documents
to determine exactly what is being referred to.  Plaintiff's Amended Opposition is replete with
unfounded conclusory statements, many of which fail to address specific statements of fact put
forth by Defendants.  Although Defendants' re-submissions minimally address their original
deficiencies, they have adequately identified evidence to demonstrate the absence of any genuine
issues of material fact regarding all but two claims.  Plaintiff, on the other hand, has essentially
rested "upon bare assertions, conclusory allegations [and] suspicions to support [her] claim."
*Sentry Select Ins. Co. v. LBL Skysystems (U.S.A.), Inc.*, 486 F. Supp. 2d 496, 506 (E.D. Pa. 2007)
(citations omitted).

Workers' Compensation Judges may be promoted. (Baur Decl. Ex. 1a at 8.)  Plaintiff's responsibilities included writing decisions to be reviewed and approved by the Workers' Compensation Judges. (*Id.*)  Plaintiff was hired in part to help reduce the Workers' Compensation Judges' backlog. (Hines Dep. 34:9-20, August 7, 2008.)  Plaintiff alleges that, when the Attorney Examiners I were hired, it was with the understanding that they would be promoted to Workers' Compensation Judges. (Defs.' Am. Statement of Undisputed Facts, Ex. 1, Baur 2, D066.)  Plaintiff's direct supervisor at the time she was hired was Defendant Thomas Hines ("Hines"), who was Judge Manager of the region. (Pl.'s Resp. to Defs.' Am. Statement of Material Facts ¶ 3.)  Two other Attorney Examiner I's, both male, were promoted to Workers' Compensation Judge positions by 2002. (Baur Decl. ¶ 18; Defs.' Am. Statement of Undisputed Facts, Ex. 1, Baur 2, D066.)

In November and December of 2002, Plaintiff bid for a Workers' Compensation Judge position in Reading, Pennsylvania, and one in Allentown, Pennsylvania. (Pl.'s Original Resp. to Defs.' Statement Material Facts, Ex. B, 3-4; Defs' Am. Statement of Undisputed Facts, Ex. 1, Baur 2, D061.)[4]  Terry Knox was hired for the position in Reading. (Defs.' Am. Statement of Undisputed Facts, Ex. 1, Baur 2, D061.)   In February, 2003, Plaintiff learned that Beverly Doneker had been hired for the Allentown position. (*Id.*)  Plaintiff filed a civil service complaint with the Civil Service Commission regarding the Allentown non-promotion. (Pl.'s Original

---

[4]  Recognizing that neither party has followed this Court's directives regarding proper and adequate citation for purposes of establishing undisputed facts, and issuing another such directive would most certainly prove to be an exercise in futility, this Court has given Plaintiff the benefit of every inference by referencing previous filings to determine whether or not certain facts have been established of record.  In fact, upon refiling her Opposition to the instant Motion, Plaintiff relies in large part upon what she deems to be the sufficiency of her original filings.  (Pl.'s Br. In Opp'n to Defs.' Mot. Summ. J. at 3.) Accordingly, the court will indicate use of such documents whenever relevant.

Resp. to Defs.' Statement Material Facts, Ex. B; Baur Decl. ¶ 18.)  Plaintiff filed a dual

complaint regarding both non-promotions with the Pennsylvania Human Relations Commission

("PHRC") and the Equal Employment Opportunity Commission ("EEOC") on August 1, 2003,

and amended the complaint on December 11, 2003. (Defs.' Am. Statement of Undisputed Facts,

Ex. 1, Baur 2.)  In the complaint, Plaintiff alleged discrimination based on gender, age, and

retaliation. (*Id.*)  In September 2004, Plaintiff notified the EEOC of her change of address. (*Id.* at

Ex. 1, Baur 3.)  However, when the EEOC  ultimately sent Plaintiff her Right to Sue letter on

January 17, 2007, Plaintiff never received it because it had been sent to her previous address.

(*Id.* at Ex. 1, Baur 4.)

On April 1, 2005, Defendant Karen Wertheimer ("Wertheimer") replaced Hines as

Plaintiff's direct supervisor and as Judge Manager of the region. (Defs.' Am. Statement of

Undisputed Facts ¶ 9.)  On November 17, 2005, Wertheimer met with Plaintiff to discuss certain

job-related issues. (Baur Decl. ¶ 32; Wertheimer First Dep. 64:10-65:23, August 11, 2008; Defs.'

Am. Statement of Undisputed Facts, Ex. 1, Baur 9.)  One such issue involved Plaintiff's use of a

key to access the Northeast office off-hours.  (Werthheimer First Dep. 63:3-11.)  When

Wertheimer asked Plaintiff why she needed the key, Plaintiff told her that she needed to come in

after hours to do work. (Wertheimer First Dep. 55:1-56:18, 63:23-65:23, 70:4-25.)  Wertheimer

found this statement odd, because Plaintiff had also told her that she did not have enough work to

do. (*Id.*)  As such, Wertheimer requested that Plaintiff fill out timesheets and turn in her key to

the office she had previously been going to after hours. (*Id.*)  According to Wertheimer, the

timesheet request was to determine whether Plaintiff in fact had too much work, or not enough.

(*Id.*)

On February 9, 2006, Wertheimer approached Plaintiff's cubicle in order to discuss

Plaintiff's upcoming attendance at an International Association of Industrial Accident Boards and Commissions ("IAIABC") conference. (Wertheimer First Dep. 93:1-12; Baur Decl. ¶ 39) Wertheimer intended to let Plaintiff know that she had to attend the conference on her own time, but the discussion soon escalated, and Wertheimer became angry with Plaintiff and started yelling at her. (Wertheimer First Dep. 93:1-95:2; Defs.' Am. Statement of Undisputed Facts ¶ 12.) Plaintiff filed a dual complaint with the PHRC and EEOC regarding this incident, alleging age discrimination and retaliation. (Baur Decl. ¶ 39; Defs.' Am. Statement of Undisputed Facts, Ex. 1, Baur 5.) Later that afternoon, Wertheimer ordered Plaintiff to attend a meeting where she again told Plaintiff that she had to attend the IAIABC conference on her own time and money, which Plaintiff said she was planning to do anyway. (Defs.' Am. Statement of Undisputed Facts ¶¶ 14–17.) On February 10, 2006, Plaintiff filed another dual complaint with the PHRC and EEOC, alleging retaliation regarding the second meeting. (Baur Decl. ¶ 40; Defs.' Am. Statement of Undisputed Facts, Ex. 1, Baur 6.)

In May 2006, Wertheimer issued Plaintiff a performance review for the dates April 2, 2005, through January 31, 2006. (Defs.' Am. Statement of Undisputed Facts, Ex. 1, Baur 8.) In the review, which included a "needs improvement" rating for "interpersonal relations," Plaintiff received an overall rating of "satisfactory." (*Id*.)

On May 15, 2006, Plaintiff filed a citizen's complaint with the United States Attorney's Office regarding an alleged supersedeas fund scheme. (Baur Decl. ¶ 50; Ex. 16a.) On July 28, 2006, Plaintiff reported this scheme, along with allegations of Wertheimer's continued retaliation, to the Civil Service Commission. (Baur Decl. ¶ 50; Ex. 18a.)

On August 21, 2006, Wertheimer and Amanda Lawrence ("Lawrence"), a human resource analyst for L&I's Labor Relations Division, met with Plaintiff in order to provide her

with a Memorandum of Instruction ("MOI"). (Defs.' Am. Statement of Undisputed Facts, ¶¶ 19–21.)  This MOI stated that Plaintiff needed to complete assignments in a more timely manner and comply with her timesheet reporting requirements. (Defs.' Am. Statement of Undisputed Facts, at Ex. 1, Baur 9.)  Wertheimer informed Baur that the MOI constituted a direct order. (*Id.*)  Plaintiff alleged that it was a setup, and she told Wertheimer and Lawrence that it would be impossible to comply with the MOI. (Baur Dep. 128:15-135:12, August 7, 2008; Baur Decl. ¶ 51.)  Plaintiff did not provide any timesheets after this meeting.  (Baur Dep. 137:16-20.)

On September 5, 2006, Peter Perry, a retired Workers' Compensation Judge, was rehired to a vacant Workers' Compensation Judge position. (Crum Dep. 101–03, November 19, 2008; Baur Decl. ¶ 59.)  Plaintiff filed a complaint with the Civil Services Commission because she was not promoted to this position. (Baur Decl. ¶ 59.)[5]

On September 21, 2006, Plaintiff went to Wertheimer's office to attend a meeting in which David Cicola ("Cicola"), L&I's Director of the Workers' Compensation Office of Adjudication (Am. Compl. ¶ 8), would be participating by phone. (Defs.' Am. Statement of Undisputed Facts ¶¶ 26–27.)  However, upon entering the office, Plaintiff wanted the door to remain open because she was "scared" of Wertheimer.  (Defs.' Am. Statement of Undisputed Facts Ex. 1, Baur 14; Baur Decl. ¶ 61.)  Wertheimer thought it would be better to have the door closed, in order to keep the conversation private. (Defs.' Am. Statement of Undisputed Facts Ex. 1, Baur 14; Baur Decl. ¶ 61.)  The situation soon escalated, prompting Plaintiff to seek the assistance of the Capitol Police. (Defs.' Am. Statement of Undisputed Facts Ex. 1, Baur 14; Baur Decl. ¶ 61.)  After this incident, Plaintiff filed a dual complaint with PHRC and EEOC, alleging

---

[5] This Court has found no evidence of record that Plaintiff actually applied for the position.

retaliation and age discrimination. (Defs.' Am. Statement of Undisputed Facts, Ex. 1, Baur 14.)

On September 25, 2006, Wertheimer and Lawrence met with Plaintiff so that they could conduct a fact finding with respect to Plaintiff's apparent noncompliance with the August 21, 2006 Memorandum of Instruction. (Defs.' Am. Statement of Undisputed Facts ¶¶ 34–35.)  At the beginning of the meeting, there was a debate as to whether the door would remain locked or unlocked. (Defs.' Am. Statement of Undisputed Facts, Ex. 2; Lawrence Dep. 49:22-51:20; Baur Decl. ¶ 62.)  Lawrence claims that throughout the meeting Plaintiff did not address Wertheimer and that her manner appeared insubordinate. (Defs.' Am. Statement of Undisputed Facts, Ex. 2, Lawrence Dep. 54:25-58:11, November 12, 2008.)  Lawrence then asked Wertheimer to leave the meeting so that she could speak privately with Plaintiff. (*Id.* at 58:25-59:3.)  At that time, Plaintiff told Lawrence that she was afraid of Wertheimer, and that if given the opportunity, she believed Wertheimer would push her down the steps. (*Id.* at 59:22-60:15.)  Baur also told Lawrence that she had been subject to numerous incidents of workplace violence, including *at least* four choking incidents by different co-workers. (*Id.* at 88:11-21.) Lawrence claims that Plaintiff was visibly upset during this conversation, and that Lawrence felt Plaintiff was genuinely fearful for her physical safety. (*Id.* at 60:3-15.)

Later on September 25, 2006, Lawrence, concerned about what Plaintiff had told her regarding workplace violence, contacted Ann Hager ("Hager") and Rebecca Pratt ("Pratt"), L&I's workplace violence coordinators. (Defs.' Am. Statement of Undisputed Facts ¶¶ 45–46.) Hager then set up a meeting with Plaintiff to discuss the situation. (*Id.* at ¶ 47.)  On September 28, 2006, Plaintiff, Hager and Pratt met, and Plaintiff told Hager she had been a victim of workplace violence. (*Id.* at ¶¶ 48-49; Baur Decl. ¶ 64.)  Hager became very concerned about Baur's behavior during the meeting, and shortly thereafter, called Donna Hoskins-Helm

7

("Hoskins-Helm"), the Acting Division Chief for Workplace Support Services, to ask permission

to request an Independent Psychological Examination ("IPE") for Baur.[6]  (Defs.' Am. Statement

of Undisputed Facts, ¶ 54–55; Ex. 3, Hager Dep. 72:16-78:4, October 15, 2008.)  Hager

submitted the request to the Governor's Office of Administration.  (Hager Dep. 101:25-102:1-

11.)  Hoskins-Helms reviewed the request and determined that there was reasonable cause to

require Baur to undergo the IPE.  (*Id.* at Ex. 4, Hoskins-Helm Dep. 18:7-10, November 12, 2008;

Hager Dep. 97:4-7.)

On October 10, 2006, Plaintiff was informed that she would be suspended the following

day for failing to comply with the August 21, 2006 Memorandum of Instruction. (Baur Decl. ¶

65; Defs.' Am. Statement of Undisputed Facts, Ex. 1, Baur 10.)  Plaintiff did in fact serve the one

day suspension on October 11, 2006. (Baur Decl. ¶ 65.)  The following day, Plaintiff met with

Cicola, Lawrence, and Hager.  (Defs.' Am. Statement of Undisputed Facts Ex. 1, Baur Dep.,

149–50; Baur Decl. ¶ 66.)  Cicola instructed Plaintiff that she had to contact the State

Employees' Assistance Program ("SEAP") to schedule an IPE. (Defs.' Am. Statement of

Undisputed Facts Ex. 1, Baur Dep. 150:4-7; Baur Decl. ¶ 66.)  Baur refused, prompting Cicola to

suspend Plaintiff .  (Defs.' Am. Statement of Undisputed Facts Ex. 1, Baur Dep.150:8-10.)

Plaintiff received official written notice of the suspension by letter dated October 16, 2006. (*Id.*

at Ex. 1, Baur 12.)

On October 23, 2006 Lawrence and Cicola met with Plaintiff and again instructed her to

contact SEAP, but Plaintiff again refused. (Defs.' Am. Statement of Undisputed Facts ¶¶ 67–69;

Baur Decl. ¶ 67.)  On November 4, 2006, Plaintiff received a letter dated October 31, 2006,

---

[6] An Independent Psychological Examination can be used when an agency has significant
concern regarding an employee's behavior, but is not at the point of termination.  (Defs.' Am.
Statement of Undisputed Facts, Ex. 5 ¶ 4.)

which stated that L&I had officially terminated her for failing to contact SEAP in order to

schedule an IPE.  (Baur Decl. ¶ 68; Defs.' Am. Statement of Undisputed Facts, Ex. 1, Baur 13.)

Plaintiff avers that on November 6, 2006, someone at PHRC told her that she did not need to file

another complaint after she was fired, as it would all be included in the September 2006

complaint. (Baur Decl. ¶ 69.)

Plaintiff commenced the instant action by filing a Complaint on March 12, 2006, which

she later amended on June 17, 2008.

### III.    Standard of Review

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving

party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that

there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law."  Fed. R. Civ. P. 56(c)(2).  A motion for summary judgment will not be defeated

merely because there is some factual dispute between parties; only disputed material facts that

might affect the outcome of the suit will preclude the entry of summary judgment. *Anderson v.

Liberty Lobby, Inc.*, 477 U.S. 242, 248. (1986). "[T]he court's function is not to weigh the

evidence or to determine the truth of the matter, but only to determine whether the evidence of

record is such that a reasonable jury could return a verdict for the non-moving party." *Orsatti v.

New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995) (internal citations omitted).  Instead,

> A court should grant summary judgment "if the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with the affidavits, if any, show
> that there is no genuine issue as to any material fact and that the moving party is
> entitled to a judgment as a matter of law." The Supreme Court has further ruled
> that a "genuine" issue exists if "the evidence is such that a reasonable jury could
> return a verdict for the non-moving party," and a factual dispute is "material"
> when it "might affect the outcome of the suit under the governing law."
>
> In considering a motion for summary judgment, "the inferences to be drawn from
> the underlying facts . . . must be viewed in the light most favorable to the party

> opposing the motion." In a summary judgment motion, the moving party has the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. The party opposing the motion, however, cannot rely merely upon bare assertions, conclusory allegations, or suspicions to support its claim.

*Sentry Select Ins. Co. v. LBL Skysystems (U.S.A.), Inc.*, 486 F. Supp. 2d 496, 506 (E.D. Pa. 2007)

(citations omitted).

In support of her Opposition to the instant Motion, Plaintiff relies heavily upon a Declaration she prepared on March 13, 2009.  (Doc. No. 32.)  In said Declaration, Plaintiff's version of various events differs from that given during her deposition.  This Court is mindful that:

> In ruling on a motion for summary judgment, a court may consider, among other things, affidavits when determining whether no genuine issue of material fact exists such that a party is entitled to judgment as a matter of law.  Affidavits filed in support of a motion for summary judgment may be considered for the purpose of ascertaining whether a party has raised an issue of fact.
>
> A party, however, may not escape summary judgment by attempting to create a material issue of fact "by filing an affidavit disputing his or her own sworn testimony without demonstrating a plausible explanation for the conflict."

*Lytle v. Capital Area Intermediate Unit*, No. 05-0133, 2009 U.S. Dist. LEXIS 1430, at *6 (M.D. Pa. Jan. 9, 2009) (citations omitted), *aff'd,* 393 F. App'x 955 (3d Cir. 2010).

In the Motion for Summary Judgment presently before this Court, Defendants raise various grounds in support of their contention that no genuine issues as to any material facts exist, which would entitle Plaintiff to relief.  A discussion of same follows.

## IV.    Discussion

### A.    Timeliness

#### i.    Constitutional Claims

Defendants first argue that all of Plaintiff's constitutional claims which arise before the appropriate statute of limitations, must be deemed time-barred. Defendants are correct. As Defendants argue and Plaintiff concedes, the statute of limitations for a § 1983 constitutional claim is determined by the statute of limitations for personal injury actions in the state where the alleged violations occur. *Owens v. Okure*, 488 U.S. 235, 249–50 (1989). In Pennsylvania, personal injury actions are subject to a two year statute of limitations. 42 PA. CONST. STAT. § 5524 (2004); *see also Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 78 (3d Cir. 1989) (finding that Pennsylvania's two year statute of limitations for personal injuries should be applied to § 1983 claim). The cause of action for a § 1983 claim accrues when a plaintiff knew or should have known his or her rights had been violated. *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991). Here, Plaintiff filed her initial complaint on March 12, 2008. Thus, any claims before March 12, 2006, are time barred.

Plaintiff argues that all of her claims, including those dating back to 2003, are timely because of the continuing violations theory. Although Plaintiff does not properly and specifically enumerate her claims in the Amended Complaint, it appears to this Court that the § 1983 claims are intended to include retaliation in violation of the First Amendment, and gender discrimination in violation of the Fourteenth Amendment.[7]  (Am. Compl. ¶ 35.)

The continuing violations theory allows a plaintiff to recover for "conduct that began

---

[7] Although Plaintiff does not delineate in her Amended Complaint which facts relate to specific claims, all possible inferences to be drawn from the underlying facts are being viewed in a light most favorable to Plaintiff.

prior to the filing period if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination." *Rush v. Scott Specialty Gases, Inc.*, 113 F.3d 476, 481 (3d Cir. 1997) (citations omitted). However, the continuing violations theory cannot be applied to discrete, independently actionable acts. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112–14 (2002). The Third Circuit has explicitly held that the continuing violations theory does not apply to First Amendment retaliation claims, because retaliation claims "are always individually actionable, even when relatively minor." *O'Connor v. City of Newark*, 440 F.3d 125, 127–28 (3d Cir. 2006) (applying the Supreme Court's holding in *Morgan*, a Title VII case, to § 1983 retaliation claims). Therefore, all acts of retaliation that Plaintiff alleges that occurred prior to March 12, 2006, are barred by the statute of limitations.

### ii. 2003 EEOC Complaint

Plaintiff filed a dual complaint with the PHRC and the EEOC in 2003, alleging gender discrimination, age discrimination, and retaliation. Defendants argue that any claims arising from this complaint should be time-barred because Plaintiff did not file a complaint in this Court within the proper time limit after receiving a Right to Sue letter. Defendants are incorrect.

Before filing a Title VII complaint in federal court, a plaintiff must first file a complaint with the EEOC and must receive a Right to Sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1); *see also Burgh v. Borough Council*, 251 F.3d 465, 470 (3d Cir. 2001) ("A complainant may not bring a Title VII suit without having first received a right-to-sue letter."). The plaintiff then has ninety days from the time he or she receives the letter to file an action in federal court. 42 U.S.C. § 2000e-5(f); *Mosel v. Hills Dep't Store*, 789 F.2d 251, 252–53 (3d Cir. 1986).

The EEOC sent Plaintiff a Right to Sue letter on January 17, 2007, regarding her 2003 complaint. (Defs.' Am. Statement Undisputed Facts, Ex. 1, Baur 4.) Plaintiff filed this action on

March 12, 2008, more than ninety days later.  The EEOC, however, had sent the Right to Sue letter to Plaintiff's previous address, so Plaintiff never received the letter.[8]  *(Id.)*  In 2004, Plaintiff informed the EEOC of her change of address.[9]  *(Id.* at Ex. 1, Baur 3.)  Plaintiff claims that she did not receive the Right to Sue letter because the EEOC sent it to the wrong address, and therefore this Court should equitably toll the ninety-day limit.

The time limitations in Title VII are not jurisdictional, and therefore they may be modified by equitable concerns, including tolling.  *Podobnik v. U.S. Postal Serv.,* 409 F.3d 584, 591 (3d Cir. 2005) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994)).  The doctrine of equitable tolling, which stops a statute of limitations period from running after a claim has accrued, should only be used "sparingly."  *Id.* (citing *Oshiver*, 38 F.3d at 1380; *Morgan*, 536 U.S. at 113).  The plaintiff bears the burden of proving that the equitable tolling doctrine applies. *Courtney v. La Salle Univ.*, 124 F.3d 499, 505 (3d Cir. 1997).

As the *Podobnik* court recognized,

> There are three principal situations in which equitable tolling is appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action, and that deception causes non-compliance with an applicable limitations provision; (2) where the plaintiff in some extraordinary way has been prevented from asserting his rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum.

*Podobnik*, 409 F.3d at 591 (citing *Oshiver*, 38 F.3d at 1387).  The situation presented herein falls

---

[8] The Third Circuit has instructed that when the actual date of receipt is not known, "courts will presume that a plaintiff received her right-to-sue letter three days after the EEOC mailed it." *Seitzinger v. Reading Hosp. & Med. Ctr.,* 165 F.3d 236, 239 (3d Cir. 1999).

[9] Courts have refused to equitably toll the ninety-day time limit when the EEOC sends the Right to Sue letter to the wrong address because the plaintiff did not inform it of a change of address. *See, e.g., Banks v. Rockwell Int'l N. Am. Aircraft Operations*, 855 F.2d 324, 326–27 (6th Cir. 1988) (ninety-day time period not equitably tolled where plaintiff failed to notify EEOC of change of address, and Right to Sue letter sent to wrong address).  In this case, the record clearly demonstrates that Plaintiff informed the EEOC of her change of address.

under the second category; namely, that Plaintiff was prevented from filing her claim due to an extraordinary circumstance.

"In determining whether a right-to-sue letter may be deemed received notwithstanding the plaintiff's assertion [s/he] never saw it, courts have considered the degree to which the plaintiff [her/himself] is responsible for [her/his] own failure to receive the letter." *Carl v. Western - Southern Life Ins. Co.*, No. 09-3990, 2010 U.S. Dist. LEXIS 105891, at *8-9 (E.D. Pa. Sept. 30, 2010).  In this case, through no fault of her own, the EEOC sent Plaintiff's Right to Sue letter to the wrong address.  This constitutes an extraordinary circumstance that prevented Plaintiff from asserting her rights. *See Joritz v. Edinboro Univ. of Pennsylvania,* No. 07-230, 2008 U.S. Dist. LEXIS 48365, at *23-24 (W.D. Pa. June 23, 2008) (applying equitable tolling where a plaintiff's failure to receive notice of her right to sue was beyond her control, since she had informed the EEOC of her new address, yet they sent the notice to her old address) (citations omitted)*; Davis v. Visteon Sys., L.L.C.*, No. 00-133, 2001 U.S. Dist. LEXIS 22829, at *14-15 (S.D. Ind. Dec. 14, 2001) (court found that equitable tolling applied to situation where EEOC sent Right to Sue letter to plaintiff's previous address even though plaintiff had informed EEOC of new address); *Smith v. Chase Manhattan Bank*, No. 97-4507, 1998 U.S. Dist. LEXIS 14711, at *12 (S.D.N.Y. Sept. 18, 1998) (same).  Therefore, this Court shall apply equitable tolling to Plaintiff's 2003 EEOC complaint, the merits of which will be considered below.

### B.    Remaining Claims

Defendants have moved for summary judgment with respect to Plaintiff's entire Amended Complaint.[10]  After taking into account the above timeliness issues, the following

---

[10]   As will be discussed hereinbelow, although Defendants have moved for summary judgment regarding Plaintiff's "entire" Complaint, they have not briefed every discernable claim contained therein.

claims remain for this Court's consideration: Title VII Gender Discrimination; Title VII

Retaliation; and, § 1983 Retaliation (for acts occurring after March 12, 2006).  Each of these

claims shall be considered in turn.[11]

### i.      Title VII Gender Discrimination

In order to sustain her Title VII gender discrimination claim, Plaintiff first must exhaust

all administrative remedies.  Of the four PHRC/EEOC complaints filed by Plaintiff herein, only

the 2003 complaint alleged gender discrimination. (Defs.' Am. Statement Undisputed Facts, Ex.

1, Baur 2; Ex. 1, Baur 5; Ex. 1, Baur 6, Ex. 1, Baur 14.)  Thus, Plaintiff did not exhaust her

administrative remedies for any subsequent gender discrimination claims and only the merits of

the 2003 claim will be considered.[12]

---

[11] As alluded to hereinabove, this Court again notes that despite a second opportunity to adequately litigate the instant motion before this Court, the briefs submitted by the respective parties are severely lacking in proper support and citations. Plaintiff's brief is particularly deficient in this regard. Rather than providing relevant fact application to the case law cited in her brief, Plaintiff instead makes numerous comments such as: "As set forth in Plaintiff's Declaration, there is abundant evidence of . . . ."; "Clearly, Plaintiff points to facts to support her discrimination claim . . . ."; and "The evidence relied upon by Plaintiff throughout, and as specifically reflected in her Declaration, shows compellingly . . . ." (Pl.'s Br. in Opp'n to Defs.' Mot. Summ. J., at 16–17.)  None of these comments are ever supported with citations to a very voluminous record. As several courts have noted, "'Judges are not like pigs, hunting for truffles buried in the record.'" *Lee v. Lindsey*, No. 06-1824, 2009 U.S. Dist. LEXIS 33545, at *5 n.2 (M.D. Pa. Apr. 21, 2009) (quoting *Doeblers' Pa. Hybrids Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006)).  It is the non-moving party's obligation in opposing summary judgment to "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).  Nevertheless, the Court has independently reviewed all documents to which Plaintiff has cited.

[12] A gender discrimination claim cannot fairly be said to be within the scope of Plaintiff's 2006 complaints. Plaintiff specifically alleges age discrimination and retaliation in these complaints.  As the court in *Antol* noted, "[t]he specifics of [plaintiff's] disability discrimination charge do not fairly encompass a claim for gender discrimination merely because investigation would reveal that [plaintiff] is a man and the two employees who received the positions are women. The investigation focused, quite properly . . . on the gravamen of [plaintiff's] complaint—disability discrimination." *Antol*, 82 F.2d at 1296.  Similarly here, just because the EEOC investigation may have revealed that Plaintiff is a woman and certain adverse employment actions were not taken against men, this does not mean that a gender discrimination claim is within the scope of the EEOC complaint or investigation.

Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1).  Title VII claims are analyzed under the familiar *McDonnell Douglas*[13] burden-shifting framework.  *See Jones v. School Dist. of Philadelphia*, 198 F.3d 403 (3d Cir. 1999).  Pursuant to this standard, a plaintiff must first establish a *prima facie* case of discrimination by showing: (1) the employee is a member of a protected class; (2) the employee is qualified for the position; (3) the employee suffered an adverse employment action; and (4) the action was taken under circumstances that give rise to an inference of unlawful discrimination. *Jones*, 198 F.3d  at 410-11.  If a plaintiff is successful, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the employment action.  *McDonnell Douglas*, 411 U.S. at 802. Once a legitimate reason for the employment action is presented, the burden shifts back to the plaintiff to show that the employer's proffered reason was in fact pretext for gender discrimination.  *Id.* at 804.

To establish a prima facie case of gender discrimination, Plaintiff must show that she: (1) is a member of a protected class, (2) applied for and was qualified for the position for which the employer was seeking applicants, (3) suffered an adverse employment action, and (4) was treated less favorably than similarly-situated non-members of the protected class.  *Id.* at 802 n.13 (stating elements of prima facie case for racial discrimination, but noting that elements for prima facie

---

It is noteworthy that most of the actors during the 2006 incidents were women (e.g. Wertheimer, Lawrence, Hager, Pratt and Crum).  Although this does not preclude a gender discrimination claim, it creates a stronger inference that the EEOC would not investigate a claim of gender discrimination without specific allegations of gender discrimination.

[13]    *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

case may change depending on specific facts of each case).

In her 2003 EEOC complaint, Plaintiff does not specify which non-promotion she is filing the complaint about. (Defs.' Am. Statement Undisputed Facts, Ex. 1, Baur 2, ¶¶ 6–16.)  At one point in her amended EEOC complaint, she mentions five other people who were ultimately promoted to Workers' Compensation Judge positions. (*Id.* at ¶ 9.)  The first two - the promotions of the other Attorney Examiners I, Tom Kutz and Marc Harrison - occurred more than 300 days before the filing of the EEOC complaint and are therefore time barred from that complaint.[14] (Baur Decl. ¶ 18; Crum Dep. 120:2-4.)  Regarding the third promotion for a position in Lancaster, Plaintiff admits she did not apply for same, and therefore this non-promotion would also not be included in this complaint. (Pl.'s Original Resp. to Defs.' Statement Material Facts, Ex. B, 3–4.)  This leaves the positions in Reading and Allentown, both of which Plaintiff claims she bid for. (*Id.*)

The Allentown claim is completely without merit because a woman was selected for the position. (Baur Decl. ¶ 18.)  Thus, Plaintiff fails to meet the fourth element of the prima facie case, namely that she was treated less favorably than a similarly-situated *non-member* of the protected class.

With respect to the Reading position, Plaintiff meets three of the four elements of the prima facie standard, namely that, as a woman, she is a member of a protected class; she suffered an adverse employment action by not being promoted; and the person who was promoted was a male.  However, to fully establish the prima facie case, Plaintiff must also prove that she was qualified for the position, which she cannot do.  In fact, Plaintiff points to essentially no evidence

---

[14] As discrete, individually actionable acts, Plaintiff cannot claim that the continuing violations theory revives these claims of non-promotion.

in this extensive record regarding her non-promotion to the Reading position.  There is more information regarding the Allentown non-promotion, as there is a Pennsylvania Commonwealth Court decision that was handed down regarding a Civil Service complaint over said non-promotion.  (Pl.'s Original Resp. to Defs.' Statement Material Facts, Ex. D.)  In that decision, the court notes that Plaintiff was not eligible for the Allentown position because she did not have one of the top three scores on the Workers' Compensation Judge exam (also referred to as the "Rule of Three").  (*Id.*)  The Rule of Three is a statutory provision and is discussed in several depositions. 71 PA. CONS. STAT. § 741.601 (2002); *e.g.* (Cicola Dep. 40:13-44:15, August 11, 2008.) *But see* (Baur Dep. 100:3-102:5) (acknowledging that the Rule of Three is sometimes not used).  As the burden to prove a prima facie case lies with Plaintiff, she has not demonstrated that she was in fact eligible for the Reading position either through the Rule of Three or some other requirement.[15]

Accordingly, Defendants' Motion for Summary Judgment with respect to Plaintiff's Title VII gender discrimination claim shall be granted.[16]

_____

[15] Within the Commonwealth Court decision, it is noted that Terry Knox, who was selected for the Reading position, scored a 100 on the Workers' Compensation Judge exam, whereas Plaintiff only scored a 75, which made her ineligible for the Allentown position (and likely ineligible for the Reading position as well). (Pl.'s Original Resp. to Defs.' Statement Material Facts, Ex. D.)

[16] Even if the Court viewed Plaintiff's gender discrimination claim as being fairly within the scope of her 2006 EEOC complaints, Plaintiff would not be able to establish a prima facie case of gender discrimination. Most importantly, Plaintiff cannot prove that similarly-situated men were treated more favorably than she was, as she has pointed to no instances of male employees not being suspended for failing to comply with Memoranda of Instruction or for insubordination, nor has she provided any evidence of male employees not being terminated for failing to comply with a direct order.

ii.      **Retaliation Under Title VII**

Preliminarily, Defendants seek to dismiss all portions of Plaintiff's retaliation claim that

occurred after the EEOC complaint she filed on September 21, 2006, for not exhausting

administrative remedies.  For reasons which follow, this argument by Defendants is without

merit.

Before a Title VII action can be brought in this Court, Plaintiff must exhaust all

administrative remedies. *Ryan v. Gen. Mach. Prods.,* 277 F. Supp. 2d 585, 593 (E.D. Pa. 2003).

"Before a claim can be exhausted, it must have been included in the plaintiff's charge with the

administrative agency." *Id.* at 593–94.  "The test for determining if a plaintiff properly exhausted

is whether the facts alleged in the subsequent Title VII action are fairly within the scope of the

prior EEOC complaint or the investigation arising therefrom."  *Id.* at 594. (citing *Antol v. Perry*,

82 F.3d 1291, 1295 (3d Cir. 1996)); *see also Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 966 (3d

Cir. 1978) (internal quotation marks omitted) ("Once a charge of some sort is filed with the

EEOC, this court has held that the scope of a resulting private civil action in the district court is

defined by the scope of the EEOC investigation which can reasonably be expected to grow out of

the charge of discrimination.").

Although Defendants are correct that administrative remedies must be exhausted in a

Title VII case, there is an exception.  "The scope of a judicial complaint is not limited to the four

corners of the administrative charge." *Nerosa v. Storecast Merch. Corp.*, No. 02-440, 2002 U.S.

Dist. LEXIS 16210, at *11 (E.D. Pa. Aug. 28, 2002) (citing *Love v. Pullman*, 404 U.S. 522, 527

(1972)).  The Third Circuit "has long held that post-charge filing conduct can be raised in federal

court if it is reasonably related to or reasonably could be expected to grow out of the charge of

discrimination." *Patsakis v. E. Orthodox Found*, No. 04-1662, 2006 U.S. Dist. LEXIS 55330, at

19

*21 (W.D. Pa. May 17, 2006).

Based on the facts presented in Plaintiff's Amended Complaint, the only actions of the retaliation claim occurring after the September 21, 2006 EEOC complaint were Plaintiff's one-day suspension and her termination for failing to comply with an order regarding scheduling of an IPE.  Both of these events happened within approximately 45 days of the EEOC complaint. Plaintiff's suspension and ultimate termination meet the "reasonably related" test set forth in *Patsakis*.  Furthermore, the suspension and termination, which happened in fairly close proximity to the filing of the complaint, would have reasonably been discovered during the course of an EEOC investigation.  Thus, this portion of the claim can reasonably be expected to grow out of the EEOC charge.  Therefore, Plaintiff's Title VII retaliation claim properly includes her suspension and termination, and Defendants' motion will be denied with respect to this argument.[17]

With regard to the merits of Plaintiff's Title VII retaliation claim, summary judgment is appropriate.  This particular claim encompasses Plaintiff's 2003 and 2006 EEOC complaints and is analyzed using the same burden-shifting framework established in *McDonnell Douglas*. *Gladysiewski v. Allegheny Energy*, 398 F. App'x 721, 723 (3d Cir. 2010).

To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate

---

[17] Separately, Defendants argue that Plaintiff did not exhaust her administrative remedies with respect to the hiring of Peter Perry in early September, 2006.  This Court agrees. Nowhere in Plaintiff's EEOC complaint or in her Amended Complaint does she specifically note that she was discriminated against because of Peter Perry's hiring.  In fact, the first mention of it is in Plaintiff's Opposition to Summary Judgment, where she casually asserts "[i]t should be noted that Plaintiff also challenges her September 2006 non-selection." (Pl.'s Br. in Opp'n to Defs.' Mot. Summ. J., at 17.)  This non-selection would not have arisen from a reasonable EEOC investigation as it is a discrete act that Plaintiff did not make the EEOC or this Court aware of until very late in these proceedings.  Therefore, the discrimination claim for non-selection in September 2006 was not properly exhausted.

that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse

employment action against her; and (3) there was a causal connection between her participation

in the protected activity and the adverse employment action." *Nelson v. Upsala Coll.*, 51 F.3d

383, 386 (3d Cir. 1995). With respect to the second element, an adverse employment action

means that "a reasonable employee would have found the alleged retaliatory actions 'materially

adverse' in that they 'well might have dissuaded a reasonable worker from making or supporting

a charge of discrimination.'" *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006)

(quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). Importantly, the

Supreme Court in *Burlington* noted that the context of the situation matters. *Burlington*, 548 U.S.

at 69 (opining that what may be trivial in one case may be retaliation in another).

 With respect to the causal connection element, the court may consider "a broad array of

evidence." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 284 (3d Cir. 2000). Unusually

suggestive temporal proximity between protected activity and adverse action may be sufficient on

its own to create an inference of causality. *Id.* at 280; *see also Clark Cnty. Sch. Dist. v. Breeden*,

532 U.S. 268, 273–74 (2001) (temporal proximity alone, when "very close," can in some

instances establish a prima facie case of retaliation). If the temporal proximity is not unusually

suggestive, the Court may consider whether "the proffered evidence, looked at as a whole, may

suffice to raise the inference." *Farrell*, 206 F.3d at 280 (internal citation and quotation marks

omitted). Among the kinds of evidence that the court may consider, are ongoing antagonism or

retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the

employee, or any other evidence in the record sufficient to support the inference of retaliatory

animus. *Id.* at 279–81.

 This Court considers the four EEOC complaints separately. The first, in 2003, has no

21

merit.  Plaintiff claims that the retaliatory action was non-promotion because of "internal discrimination complaints" filed "during the past several years" against Hines. (Defs.' Am. Statement of Undisputed Facts, Ex. 1, Baur 2, ¶ 18.)  Plaintiff provides no further evidence that would help her carry her burden of proving a causal connection between these complaints and her non-promotion.  Moreover, Plaintiff has proffered nothing of record to demonstrate that Hines was directly involved in her non-promotion.[18]

Plaintiff's February 9, 2006 complaint - in which she claims that the retaliation was a result of her 2003 EEOC complaint - similarly lacks merit.  (Defs.' Am. Statement of Undisputed Facts, Ex. 1, Baur 5, ¶ 19–22.)  The nearly three-year lapse precludes any inference of temporal proximity between the protected action and the alleged adverse action.  Plaintiff does not provide any other evidence to suggest that there is a causal connection between these two events.

In Plaintiff's February 10, 2006 complaint, she claims she was retaliated against when she returned from filing the February 9, 2006 complaint because Wertheimer ordered her to a meeting and threatened her with discipline if she did not attend.  (Defs.' Am. Statement of Undisputed Facts, Ex. 1, Baur 6, ¶¶ 6–12.)  This Court finds two problems with this claim.  First, Plaintiff has not shown that Wertheimer was even aware of the first EEOC complaint when she ordered Plaintiff to the meeting.  Although the time between the filing of the EEOC complaint and the alleged retaliation was extremely close (within hours of each other), there would be no causal connection if Wertheimer was unaware of the EEOC complaint.[19]

---

[18] In his deposition, Hines notes that he had no involvement with the Allentown positions, as Allentown was outside of his jurisdiction. (Hines Dep. 22:6-18.)  Furthermore, when describing the areas in his district, Hines does not mention Reading, and so an inference can be made that he also did not have any input in the Reading non-promotion, as well. (*Id.* at 14:2-16.)

[19] Aside from Plaintiff claiming in her Declaration that "[Plaintiff] told Ms. Wertheimer [she] was going to PHRC," (Baur Decl. ¶ 39) Plaintiff has provided this Court with no basis to

The second problem is that ordering an employee to a meeting under the threat of possible disciplinary action does not constitute an adverse employment action. The Supreme Court in *Burlington* emphasized that the adverse action must be material because "it is important to separate significant from trivial harms." *Burlington*, 548 U.S. at 68. Although the Supreme Court also noted that context matters, it hardly seems likely that ordering an employee to a meeting to discuss attendance at a trade conference would constitute a materially adverse employment action that would dissuade a reasonable employee from filing or pursuing a charge. Accordingly, Plaintiff's third alleged instance of retaliation fails.

The final claim of retaliation stems from the September 21, 2006 complaint. The following acts in 2006 would likely arise from a reasonable investigation into this claim for retaliation: the August 21, 2006 MOI meeting; the September 21, 2006 meeting/confrontation with Wertheimer; the instruction for Plaintiff to schedule an IPE; Plaintiff's one-day suspension; and Plaintiff's ultimate termination.

With respect to the August 21, 2006 MOI and the September 21, 2006 confrontation with Wertheimer, these events occurred before the filing of the September 21, 2006 complaint. Therefore, Plaintiff would have to prove that these events were retaliation for protected activity conducted prior to September 21, 2006. In addition to the EEOC complaints Plaintiff filed in February, Plaintiff also filed a citizen's complaint on May 15, 2006, with the United States Attorney's Office regarding an alleged supersedeas fund scheme, and on July 28, 2006, Plaintiff reported this scheme, along with Wertheimer's alleged retaliation, to the Civil Service

conclude that Wertheimer was aware of the EEOC complaint. Wertheimer, in fact, denies that Plaintiff told her this. (Wertheimer First Dep. 94:15-22.) Plaintiff's "evidence" to support this claim consists of a conclusory statement derived from her self-serving Declaration, which was prepared after conclusion of her deposition, thereby rendering the averments contained therein immune from cross-examination.

Commission.  Although there is no bright line rule for an unusually suggestive temporal
proximity, courts have rejected this inference when the events were at least three months apart.
*E.g., Clark Cnty. Sch. Dist.*, 532 U.S. at 273 (citing favorably Tenth and Seventh Circuit cases
that found a three-month and four-month period, respectively, insufficient).  Both of these events
were within two months of the Civil Service complaint and thus might establish an unusually
suggestive temporal proximity.

The September 21, 2006 incident, however, would not constitute an adverse employment
action.  That incident simply involved Wertheimer and Plaintiff arguing with each other over
having a door open or closed for a meeting.  An argument such as this cannot reasonably be
deemed an employment "action" at all.

The August MOI could be considered an adverse employment action, as it specifically
instructed Plaintiff to accomplish seven different tasks. (Defs.' Am. Statement of Undisputed
Facts, Ex. 1, Baur 9.)  Assuming that Plaintiff therefore meets her burden of establishing a prima
facie case of retaliation, the burden would then shift to Defendants identify legitimate, non-
discriminatory reasons for their actions.  Here, the reasoning for the MOI was that Plaintiff was
instructed to provide timesheets on November 17, 2005, and had failed to fully comply with this
instruction.  Additionally, Defendants maintained that Plaintiff had not produced draft decisions
within acceptable timeframes. (*Id.*)  These reasons are legitimate and non-discriminatory.
Plaintiff has the final burden of demonstrating these reasons are pretext for retaliation.  Aside
from stating in a conclusory fashion that the MOI was retaliatory, Plaintiff has produced no
evidence that the reasons for the MOI were pretextual, and therefore she has not met her burden
here.

The instruction to schedule an IPE, the one-day suspension, and Plaintiff's termination,

may all be deemed to constitute adverse employment actions.  All three events also occurred within an unusually suggestive temporal proximity of Plaintiff's September 21, 2006 complaint.  However, Defendants assert that the complaint was not served on L&I until October 18, 2006, which was after the events that led to her termination had occurred. (Defs.' Renewed Mot. Summ. J., at 24, n.5; Defs.' Am. Statement of Undisputed Facts, Ex. 1, Baur 14.)   Although this may be true regarding the one-day suspension, Defendants held a separate fact finding conference on October 23, 2006, where Plaintiff was again instructed to schedule an IPE, and she was ultimately terminated through a letter dated October 31, 2006.  Thus, a reasonable inference can be made that Plaintiff has established a prima facie case with respect to these three events.[20]

Next, the burden shifts to Defendants to articulate legitimate, nondiscriminatory reasons for their actions.  Defendants easily meet this burden.  With respect to the one-day suspension, this was a result of Plaintiff's failure to comply with the August MOI and for insubordination. (Defs.' Am. Statement of Undisputed Facts, Ex. 1, Baur 10.)  With respect to the instruction to schedule an IPE, the reasons for this were provided by Ann Hager, a workplace violence investigator for SEAP. (Hager Dep. 72:13-74:7).  During a meeting in late September 2006, Hager was concerned about Plaintiff's well-being after being informed of what Plaintiff perceived to be numerous alleged strangulation attempts, and a physical fear of Wertheimer. (*Id.*) *See also, Kaytor v. Elec. Boat Corp.,* 609 F.3d 537, 554 (2d Cir. 2010) (summary judgment appropriate on Title VII retaliation claim where employer showed Plaintiff's "repeated exhibition of signs of paranoia" justified order for IPE, therefore termination of employment for refusal by employee to undergo same was not retaliatory).

---

[20] Assuming, *arguendo*, that the one-day suspension also occurred within an unusually suggestive temporal proximity to the EEOC complaint, as there is no indication Defendants were not aware of the complaint prior to the EEOC serving it on them.

Finally, Defendants' reasons for terminating Plaintiff are laid out in the October 31, 2006 termination letter and, when viewed in conjunction with all other pertinent portions of the record, constitute legitimate, non-discriminatory reasons.  (Defs.' Am. Statement of Undisputed Facts, Ex. 1, Baur 13.)  The letter provides that the basis for the termination was failure to schedule an IPE in violation of a direct order to do so. (*Id.*)  As such, the burden shifts back to Plaintiff to show that Defendants' reasons are pretext for retaliation.

Plaintiff has not met her final burden of demonstrating that Defendants' reasoning is pretext for retaliation.  Aside from general, conclusory accusations that Defendants had been trying to fire her for years and that they were conducting a continual campaign of retaliation, Plaintiff points to no specific evidence that suggests that Defendant's reasoning is pretextual. (Baur Decl. ¶¶ 52, 56.)  Accordingly, Plaintiff has not met her burden and summary judgment shall be granted with respect to Plaintiff's entire Title VII retaliation claim.

### iii.     First Amendment Violations Under § 1983

Plaintiff further asserts a claim of retaliation in violation of her First Amendment rights under § 1983.  For reasons set forth above, this claim must be limited to events that occurred on or after March 12, 2006.

To establish a retaliation claim under § 1983 predicated on the First Amendment, a plaintiff must show "(1) that they engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).  A defendant may still prevail by "showing that it would have taken the same action even if the plaintiff had not engaged in the protected activity." *Id.*

The Third Circuit has also articulated the test as being one where a "plaintiff must allege that his activity is protected by the First Amendment, and that the protected activity was a substantial factor in the alleged retaliatory action." *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009). "The first factor is a question of law; the second factor is a question of fact." *Id.* (internal quotation marks omitted). Finally, as with the *Lauren W.* test, if these "elements are satisfied, the burden shifts to the defendants to demonstrate that the same action would occur if the [protected activity] had not occurred." *Id.*

To establish the requisite causal connection, Plaintiff must put forth evidence proving either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Id.* Plaintiff may also show causation "from the evidence gleaned from the record as a whole." *Id.* Essentially, this is the same standard described with respect to Plaintiff's Title VII retaliation claim.

Plaintiff clearly engaged in protected activity throughout 2006, beginning with the February EEOC complaints, the May complaint to the U.S. Attorney's Office, the July 28, 2006 Civil Service complaint, and the September 21, 2006 EEOC complaint. The events that occurred on or after March 12, 2006, that could be a part of this claim are: Plaintiff's May 2006 evaluation; the August 21, 2006 MOI; her non-promotion to a Workers' Compensation Judge position in September 2006; her one-day suspension in October 2006; the instruction that she schedule an IPE; and her ultimate termination.

In order for Plaintiff to prevail, she must prove that Defendants were aware of her protected activity, otherwise there would be no causal connection. *See Ambrose v. Township of Robinson, Pa.*, 303 F.3d 488, 493 (3d Cir. 2002) ("It is only intuitive that for protected conduct

to be a substantial or motiving factor in a decision, the decisionmakers must be aware of the protected conduct.") Of all the named Defendants, only Wertheimer at any point indicates that she may have been aware of complaints filed by Plaintiff. (Wertheimer Second Dep. 80:3-84:6, January 8, 2009.)  Plaintiff has failed to adequately establish that any of the other Defendants were aware of her protected activities.

The May 2006 evaluation and August 21, 2006 MOI do not rise to the level of action that would deter a "person of ordinary firmness" from exercising First Amendment rights.  The evaluation in particular was simply a yearly evaluation, and Plaintiff has produced no evidence that it was an egregious or damaging evaluation.[21]  The MOI specifically states that it is "not a disciplinary action," (Defs.' Am. Statement of Undisputed Facts, Ex. 1, Baur 9), and although it is a direct order that could result in discipline for failure to comply, it too does not meet the *Lauren W.* standard.

With respect to Plaintiff's non-promotion in September, 2006, Plaintiff does not establish any causal connection between the non-promotion and her protected activity, as she fails to point to any evidence regarding who was involved in the promotion decision or that Plaintiff's protected activity was a motivating factor for not choosing her.  Therefore, Plaintiff's constitutional retaliation claim shall not include the September non-promotion.

This would leave the one-day suspension, instruction to schedule an IPE, and her termination.  Plaintiff cannot establish a causal connection for any of these actions.  In her deposition, Lawrence testifies that she was the one who decided to pursue a one-day suspension. (Defs.' Am. Statement of Undisputed Facts, Ex. 2, Lawrence Dep. 101:10-106:7.)  Furthermore,

---

[21] Although Plaintiff claims that the evaluation made her "unpromotable," this is a conclusory statement derived from her Declaration and is unsupported by the record.  (Baur Decl. ¶ 46.)

Hager admits in her deposition that she initiated the process for the IPE. (Defs.' Am. Statement of Undisputed Facts, Ex. 3, Hager Dep. 72:16-78:4.)  Neither Lawrence nor Hager are named defendants in this case.  Cicola and Crum are the only named defendants who may have been involved in the termination decision,[22] and Cicola was the only named defendant involved with the subsequent demands for the IPE.  However, Plaintiff has not proven that either Cicola or Crum were aware that she had engaged in any protected activity.  Therefore, Plaintiff has failed to establish a causal connection between her protected activity and the adverse actions.

Even assuming Plaintiff could meet her burden with respect to these events, Defendants have overcome this by adequately demonstrating that they would have taken these actions regardless.  The one-day suspension was issued because Plaintiff failed to comply with the August MOI.  This suspension is therefore not dependent on any retaliatory animus and would have occurred regardless of any protected activity by Plaintiff.  The decision to request an IPE was made out of concern for Plaintiff.  Again, this has no bearing on retaliatory animus, nor is it dependent on Plaintiff's protected activity.  Finally, Plaintiff's termination was a result of her failure to comply with the instruction to schedule an IPE.  According to the Commonwealth of Pennsylvania Governor's Office Manual covering SEAP and IPE Procedures, a request to undergo an IPE is considered a direct order. (Defs.' Am. Statement of Undisputed Facts, Ex. 5, 36.)  Thus, when Plaintiff failed to comply with the direct order, this constituted insubordination, for which she was terminated.  Insubordination is a valid reason for terminating an employee. *See Bisbing v. Lehighton Ambulance Ass'n*, 142 F. App'x 71, 74 (3d Cir. 2005); *Williams v. Dover Downs Inc.*, No. 05-435, 2007 U.S. Dist. LEXIS 32615, at *21 (D. Del. May 2, 2007).

---

[22] This Court notes that in her deposition, Crum testified that her only role was to sign the termination letter. (Crum Dep. 168:25-170:7, 177:6-180:10.)

Therefore, even had Defendants known about Plaintiff's alleged protected activity, they still would have terminated her for failure to comply with this direct order.

Accordingly, Defendants' Motion for Summary Judgment shall be granted with respect to this claim.

### iv.     Qualified Immunity

Defendants assert that as government employees, the individual defendants are entitled to qualified immunity with respect to Plaintiff's constitutional claims.  The two-step analysis for qualified immunity is whether the defendant's conduct violated a constitutional right and, if so, whether it was a clearly established constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (the *Saucier* sequence is no longer mandatory, and either step can be considered first).

In this case, the constitutional right that Plaintiff asserts, namely that Defendants retaliated against her in violation of her First Amendment rights, are clearly established.  In light of this Court's conclusion that Defendants did not violate any of Plaintiff's constitutional rights, they would be entitled to qualified immunity.  However, because summary judgment has been granted with regard to Plaintiff's constitutional retaliation claim, the issue is rendered moot.

### v.     Individual Defendants' Involvement in Plaintiff's Constitutional Claims

Finally, Defendants Tom Hines, Elizabeth Crum, and Todd Seelig maintain that they had no personal involvement in Plaintiff's alleged constitutional claims.

To establish a viable claim under § 1983, the plaintiff must set forth facts showing that each named defendant was personally involved in the alleged deprivation of his civil rights. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1989). The mere fact that a named defendant is in a supervisory position is insufficient as the doctrine of respondeat superior does not apply under

30

§ 1983. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978).

Inasmuch as Plaintiff's constitutional claims are limited to acts that arose on or after March 12, 2006, Defendants Hines and Seelig cannot be deemed culpable.[23]  Although Elizabeth Crum - as L&I's Deputy Secretary for the Workers' Compensation Office - was presumably aware of the events that occurred after March 12, 2006, Plaintiff has established no involvement by Crum aside from signing the final termination document. (Br. in Opp. to Defs.' Original Mot. Summ. J., Ex. A, Crum Dep. 168:25-170:7, 177:6-180:10.)  This does not rise to the level of personal involvement needed to be a named defendant under § 1983.

Despite the foregoing, and for the reasons discussed in this Court's assessment of the Defendants' qualified immunity argument, the instant issue is necessarily rendered moot.

**vi.    Section 1983 Gender Discrimination & Hostile Work Environment Claims**

In her Amended Complaint, Plaintiff alleges gender discrimination, in violation of 42 U.S.C. § 1983, and also claims that "[t]he actions to which Plaintiff has been subjected have been pervasive and regular, objectively unreasonable, and personally offensive to Plaintiff, and constitute an actionable hostile work environment." (Am. Compl. ¶¶ 35-36.)  Defendants fail to discuss these issues in their brief.  However, upon thorough review of the record *in toto,* this Court is of the opinion that no evidence exists which could support Plaintiff's allegations regarding these two issues.  Accordingly, notice is hereby given that this Court intends to grant judgment on said claims, *sua sponte.  See Sampath v. Concurrent Techs. Corp.*, No. 03-264, 2008 U.S. Dist. LEXIS 25715, at *2 (W.D. Pa. Mar. 31, 2008) ("A district court may enter

---

[23] In particular, Hines was no longer Plaintiff's supervisor after 2005.  Additionally, although Seelig was a Workers' Compensation Judge, he had minimal (at best) contact with Plaintiff throughout this period of time.  Plaintiff does not allege any involvement by Seelig in 2006. (Pl.'s Br. in Opp'n to Defs.' Mot. Summ. J., at 14.)

summary judgment sua sponte so long as the party against whom it is to be entered has notice and an opportunity to oppose.") (citation omitted); *Fontaine v. Cent. Square Condos., Inc.*, No. 99-1756, 2001 U.S. Dist. LEXIS 24208, at *20-21 (E.D. Pa. Dec. 28, 2001) (same).  The parties shall have an opportunity to address these two issues, in accordance with this Court's Order on the instant Motion.

## V.   CONCLUSION

For the reasons set forth hereinabove, Defendants' Motion for Summary Judgment shall be granted as to all of Plaintiff's claims, except those relating to gender discrimination in violation of Section 1983, and hostile work environment.

An appropriate Order follows.

BY THE COURT:


 /s/ C. Darnell Jones, II
C. Darnell Jones,  II          J.